944 So.2d 306 (2006)
P. Dewitt CASON, etc., et al., Petitioners,
v.
FLORIDA DEPARTMENT OF MANAGEMENT SERVICES, Respondent.
No. SC05-1484.
Supreme Court of Florida.
November 16, 2006.
*307 George T. Reeves of Davis, Schnitker, Reeves and Browning, P.A., Madison, FL, Andrew J. Decker, IV of the Law Office of Andrew J. Decker, III, P.A., Live Oak, FL, and Laura Beth Faragasso of Henry, Buchanan, Hudson, Suber and Carter, P.A., Tallahassee, FL, for Petitioners.
Benjamin K. Phipps of The Phipps Firm, Tallahassee, FL, S. Austin Peele of Darby, Peele, Bowdoin, and Payne, Lake City, FL, and Anthony W. Garcia, Assistant General Counsel, Department of Management Services, Tallahassee, FL, for Respondents.
Charles J. Crist, Jr., Attorney General, Christopher M. Kise, Solicitor General, *308 Louis Hubener, Chief Deputy Solicitor General, and Christine M. Guard, Assistant General Counsel, Tallahassee, FL, on behalf of the State of Florida, as Amicus Curiae.
PARIENTE, J.
In State Department of Management Services v. Cason, 909 So.2d 378 (Fla. 1st DCA 2005), the First District Court of Appeal certified the following as a question of great public importance:
DO THE JURISDICTIONAL NON-CLAIM PROVISIONS OF SECTION 194.171, FLORIDA STATUTES, APPLY TO BAR A CLAIM OF THE STATE THAT ASSERTS AN ASSESSMENT IS VOID BECAUSE IT WAS MADE ON PROPERTY IMMUNE FROM AD VALOREM TAXATION?
Id. at 382. In ruling on and certifying this question, the First District vested us with jurisdiction. See art. V, § 3(b)(4), Fla. Const. We agree with the First District that because of its sovereign immunity from ad valorem taxation, the State is not a "taxpayer" subject to the sixty-day jurisdictional nonclaim provisions of section 194.171. We therefore approve the First District's decision in this case.

FACTS AND PROCEDURAL HISTORY
This case concerns property in Columbia County, Florida, which, according to the complaint filed in July 2000, is owned by the State and used to operate a 350-bed youthful offender prison, the Lake City Correctional Facility. As a result of nonpayment of ad valorem taxes on the property for the 1996 and 1997 tax years, the tax collector for Columbia County sold two tax certificates for the taxes due.[1] The latter of these certificates, which had a face value of $132,313.84, was issued to Charlie Ottinger, Betty Ottinger, Gina Ottinger, and Valerie Ottinger (collectively referred to as the Ottingers).
The Ottingers applied for a tax deed on the property.[2] After learning of the tax deed application, the Florida Department of Management Services (DMS) filed a complaint in circuit court seeking to enjoin the sale of the property at public auction. The complaint alleged that the State owned the property and was using it for a governmental purpose, rendering the 1996 and 1997 tax year assessments void based on the State's sovereign immunity from taxation.[3] According to the complaint, the sale of the property through a tax deed would cause irreparable harm to the guards and employees of the facility, the youthful offenders housed there, and the juvenile justice system.
The Ottingers moved for summary judgment, asserting that the failure to challenge the tax assessments within sixty days after the assessments were certified for collection as required by section 194.171(2), Florida Statutes (2006), created *309 a jurisdictional bar to the action to enjoin the tax deed sale. DMS argued that section 194.171(2) was inapplicable because the State's immunity from taxation rendered any ad valorem tax assessment on the property void. The trial court granted summary judgment in favor of the Ottingers. The court concluded that it lacked jurisdiction over the suit to enjoin the tax deed sale because the complaint was untimely under section 194.171(2). The trial court did not decide whether the property is immune from ad valorem taxation.
On appeal, the First District reversed and held that the jurisdictional bar in section 194.171 does not apply to a claim by the State contesting a tax assessment based on an assertion of sovereign immunity. See Cason, 909 So.2d at 381-82. In reaching this conclusion, the First District determined that decisions by this Court broadly applying section 194.171 to actions by private property owners contesting assessments should not be extended to property owned by the state and federal governments that is immune from taxation. Id. at 381. The First District also presumed that the Legislature was aware of court decisions recognizing the State's immunity from taxation when it enacted section 194.171, and found no language in the statute reflecting an intent to waive that immunity and classify the State as a taxpayer subject to the same jurisdictional requirements as private property owners. Id. at 381-82. However, because of uncertainty caused by language in this Court's opinions construing the statute, the First District certified the issue to this Court as a question of great public importance. Id.

ANALYSIS
The certified question asks whether the provisions of section 194.171 apply when the State is the owner of property that is immune from taxation. Our review of the First District decision addressing this issue of statutory interpretation is de novo. See B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1255 (Fla.2004). Because the certified question calls upon us to construe the statute in light of the State's immunity from ad valorem taxation, we first turn to the concept of sovereign immunity in the context of property taxation.

I. Sovereign Immunity from Taxation
It is well settled that the State is immune from taxation. See Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 255 (Fla.2005); Dickinson v. City of Tallahassee, 325 So.2d 1, 3 (Fla.1975).[4] We have explained that "[p]recedent and logic both dictate that the sovereign's general freedom from taxation derives from an `immunity,' not from an `exemption.'" Dickinson, 325 So.2d at 3. Further, we have observed that the immunity of State-owned lands from taxation "is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government." State ex rel. Charlotte County v. Alford, 107 So.2d 27, 29 (Fla.1958). Thus, in Dickinson we cited with approval Orlando Utilities Commission v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), in which the Fourth District Court of Appeal clarified the distinction between an exemption and immunity:
Exemption presupposes the existence of a power to tax whereas immunity connotes the absence of that power. The state and its political subdivisions, like a county, are immune from taxation since there is no power to tax them.
*310 325 So.2d at 3 (quoting Milligan, 229 So.2d at 264); see also City of Gainesville, 918 So.2d at 255.
Despite the State's immunity, "within constitutional limits, the Legislature may provide for the taxation of lands or other property of the State." Alford, 107 So.2d at 29. However, the authority to tax the State cannot be inferred. Such authority must be manifested by "clear and direct expression of the State's intention to subject itself to" the tax. Dickinson, 325 So.2d at 4.

II. Section 194.171, Florida Statutes (2006)
We next examine the statute at issue in this case, which governs challenges to tax assessments. Section 194.171 is part of a "comprehensive statutory scheme for counties to assess and collect taxes simultaneously with procedures for taxpayer challenges to tax assessments." Ward v. Brown, 894 So.2d 811, 814 (Fla.2004).
Section 194.171 provides:
(1) The circuit courts have original jurisdiction at law of all matters relating to property taxation. Venue is in the county where the property is located, except that venue shall be in Leon County when the property is assessed pursuant to s. 193.085(4).
(2) No action shall be brought to contest a tax assessment after 60 days from the date the assessment being contested is certified for collection under s. 193.122(2), or after 60 days from the date a decision is rendered concerning such assessment by the value adjustment board if a petition contesting the assessment had not received final action by the value adjustment board prior to extension of the roll under s. 197.323.
(3) Before an action to contest a tax assessment may be brought, the taxpayer shall pay to the collector not less than the amount of the tax which the taxpayer admits in good faith to be owing. The collector shall issue a receipt for the payment, and the receipt shall be filed with the complaint. Notwithstanding the provisions of chapter 197, payment of the taxes the taxpayer admits to be due and owing and the timely filing of an action pursuant to this section shall suspend all procedures for the collection of taxes prior to final disposition of the action.
(4) Payment of a tax shall not be deemed an admission that the tax was due and shall not prejudice the right to bring a timely action as provided in subsection (2) to challenge such tax and seek a refund.
(5) No action to contest a tax assessment may be maintained, and any such action shall be dismissed, unless all taxes on the property assessed in years after the action is brought, which the taxpayer in good faith admits to be owing, are paid before they become delinquent.
(6) The requirements of subsections (2), (3), and (5) are jurisdictional. No court shall have jurisdiction in such cases until after the requirements of both subsections (2) and (3) have been met. A court shall lose jurisdiction of a case when the taxpayer has failed to comply with the requirements of subsection (5).
We have classified this as a jurisdictional statute of nonclaim, which means that failure to meet its requirements deprives the circuit court of jurisdiction to hear the case. See Markham v. Neptune Hollywood Beach Club, 527 So.2d 814, 815 (Fla. 1988). In Markham, we concluded that section 194.171 applied to an action by condominium associations and developers challenging, on due process and equal protection *311 grounds, the constitutionality of a statute governing ad valorem taxation of fee time-share property. 527 So.2d at 814.[5] In addition to categorizing section 194.171 as a jurisdictional statute of nonclaim rather than a statute of limitations, we rejected the argument that the statute applies only to "voidable" assessments and not also to those that are being challenged as "void." Id. at 815.[6]
More recently, in Ward, we rejected an assertion by leaseholders of county property that because they were contesting the classification of the property rather than the tax assessment, their lawsuit opposing ad valorem taxation was governed by the general civil statute of limitations rather than section 194.171. 894 So.2d at 813. It was in this context, an action by lessees of governmental property, that we stated that section 194.171 applies "regardless of the legal basis of the challenge." Id. at 812. We explained that strict compliance with the sixty-day jurisdictional nonclaim provision is necessary to ensure that the counties continue to receive revenue during taxpayer disputes:
The law in Florida provides for a system for tax assessment challenges so that counties can perpetuate revenue even though taxpayers may dispute their obligations. Importantly, this scheme provides counties with the ability to collect revenue during the pendency of taxpayer challenges. The First District correctly summarized the public policy considerations with respect to the sixty-day filing period for tax assessment challenges when it stated: "[W]e are cognizant of the legislative intent and public policy behind the adoption of the nonclaim provision contained in section 194.171(2) and (6), Florida Statutes, which is to ensure prompt payment of taxes due and making available revenues that are not disputed." Chihocky v. Crapo, 632 So.2d 230, 232 (Fla. 1st DCA 1994). In section 194.171, the Legislature required taxpayers to pay "not less than the amount of the tax which the taxpayer admits in good faith to be owing" but provided that challenges will be dismissed in cases wherein the taxpayer fails to pay the undisputed amount of taxes "before they become delinquent." § 194.171(3), (5), Fla. Stat. (2001).
Id. at 815.
As the First District noted, in both Markham and Ward "the parties contesting the assessments were private holders of the property in dispute." Cason, 909 So.2d at 381. Thus, subject to their challenges to the assessments, the condominium associations and developers in Markham and the long-term lessees in Ward were clearly taxable entities. The First District concluded that this Court would not have intended to apply the holdings in Markham and Ward to actions by the State contesting an ad valorem assessment. Id.
If the procedural requirements of section 194.171 are construed to apply to an action brought by the State to challenge an assessment on grounds that property it *312 owns is immune from ad valorem taxation, the immunity would be nullified by the State's failure to challenge the assessment within sixty days after it is certified for collection. Under those circumstances, the State would have no choice but to pay the amount of ad valorem taxes determined to be due by April 1 of the year following the assessment,[7] purchase or redeem any tax certificates that are issued for the delinquent taxes,[8] or risk losing its property at a tax deed sale.[9] Indeed, as Judge Ervin observed in the majority opinion below, if section 194.171 applies to all actions challenging tax assessments without exception, even "the government of the United States would be barred from contesting a patently illegal and void assessment on property owned by it and situated in this state by reason of its failure to challenge an assessment within the required 60 days." Cason, 909 So.2d at 381.

III. Applicability of 194.171 to Challenges by the State
We now consider the effect of sovereign immunity on the application of section 194.171 to actions filed by the State. The crucial inquiry is whether the language of section 194.171 clearly and unambiguously demonstrates legislative intent to apply this section to challenges by the State on State-owned property. Although legislative intent is the "polestar" of statutory interpretation, such intent is derived primarily from the language of the statute. See State v. J.M., 824 So.2d 105, 109 (Fla. 2002). We conclude that no such "clear and direct" expression is manifested from the language of this statute. Dickinson, 325 So.2d at 4.
Section 194.171(2) provides that "[n]o action shall be brought" beyond the sixty-day period. It does not identify specific entities or persons to whom this requirement applies. Thus, we look to the other provisions of section 194.171 to determine whether the State is subject to the requirements of subsection (2). See Golf Channel v. Jenkins, 752 So.2d 561, 564 (Fla.2000) ("[R]elated statutory provisions should be read together to determine legislative intent. . . ."); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) ("It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole.").
Section 194.171(6), which provides that all the requirements of subsections (2), (3), and (5) are jurisdictional, refers to "the taxpayer." Both subsections (3) and (5) also refer to actions "the taxpayer" must take to contest an assessment. Subsection (3) requires "the taxpayer" to pay to the tax collector the amount that he or she "admits in good faith to be owing" for the tax year in which the assessment is levied, while subsection (5) provides that "the taxpayer" cannot maintain a legal challenge to an assessment unless her or she pays taxes admittedly owed for subsequent tax years. We conclude that the Legislature intended subsection (2), like subsections (3), (5), and (6), to apply to "taxpayers." Cf. Ward, 894 So.2d at 812 (stating that the sixty-day time requirement in section 194.171 "applies broadly to taxpayers' actions challenging the assessment of taxes against their property regardless *313 of the legal basis of the challenge") (emphasis supplied).
"Taxpayer" is not defined in section 194.171 or elsewhere in chapter 194. We therefore turn to a standard dictionary and to a related statute to derive the common, ordinary meaning of the term. See Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 205 (Fla.2003) (stating that where the Legislature has not defined a term, its plain and ordinary meaning can be taken from a dictionary); State v. Mitro, 700 So.2d 643, 645 (Fla. 1997) ("In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense."). Chapter 192 supplies a definition of "taxpayer" for purposes of ad valorem taxation that could encompass the State as a property owner, because taxpayer status is tied to assessments and all property, including State property, must be assessed. See § 192.001(13), Fla. Stat. (2006) ("`Taxpayer' means the person or other legal entity in whose name property is assessed. . . ."); § 193.085(1), (3)(a)-(b), Fla. Stat. (2006) (requiring all Florida property, including property owned by the State, to be assessed). The dictionary defines "taxpayer" as "one that pays or is liable for a tax." Merriam-Webster's Collegiate Dictionary 1209 (10th ed.1999). Although useful, neither of these definitions is controlling, because in construing statutory language we must give consideration "not only to the literal and usual meaning of the words, but also to their meaning and effect on the objectives and purpose of the statute's enactment." Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. of Administrative Hearings, 686 So.2d 1349, 1354 (Fla.1997).
Thus, the term "taxpayer" as used in section 194.171 should be construed in a manner consistent with the statute's purpose, which is to ensure a reliable and predictable method for counties to collect revenue while also providing for taxpayer challenges to tax assessments. See Ward, 894 So.2d at 815. Subsection (2) of the statute serves this purpose by creating a relatively brief window in which legal challenges may be brought. Subsections (3) and (5) serve the statute's purpose by ensuring that the disputed assessment does not disrupt the flow of taxes that are not in dispute. See id. Under these provisions, a "taxpayer" is not merely the entity in whose name the property is assessed, but one whom the county has the power to tax subject to disputes about individual assessments. In short, a "taxpayer" under section 194.171 is a taxable entity. This definition excludes the State and its political subdivisions, which are "immune from taxation since there is no power to tax them." Dickinson, 325 So.2d at 3. Accordingly, where the State files suit challenging ad valorem taxation on grounds of sovereign immunity, the State's assertion that it is not a taxable entity takes it outside the category of "taxpayer" targeted by section 194.171. As suggested by the First District, this is an important distinction from Markham and Ward, in which we focused on the nature of the challenges made by the private property holders rather than on their status as taxpayers. See Cason, 909 So.2d at 381 (expressing doubt that this Court intended the rationale of Markham and Ward to be extended beyond their facts).
The necessity of a clear expression of legislative intent to authorize taxation of the State reinforces our construction of section 194.171. We presume that the Legislature was aware of precedent recognizing both the State's immunity and the *314 necessity of a clear and direct expression of intent to authorize taxation of the State when it enacted the jurisdictional nonclaim provision, section 194.171, in 1983. See Cason, 909 So.2d at 382; see generally Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176, 1179 (Fla.1995) ("The legislature is presumed to know existing law when it enacts a statute."). Thus, the absence of specific language imposing the procedural requirements on the State, rather than on taxpayers generally, is significant.
Language in chapter 196, Florida Statutes (2006), which governs tax exemptions, further demonstrates an absence of legislative intent to subject lawsuits brought by the State to challenge tax assessments on grounds of immunity to the jurisdictional statute of nonclaim. Although it speaks in terms of exemption rather than immunity, section 196.199(1)(b) provides that "[a]ll property of this state which is used for governmental purposes shall be exempt from ad valorem taxation except as otherwise provided by law." As noted by the First District, this provision demonstrates that the Legislature has heeded the dictate that intent to authorize taxes on lands of the State must be expressed in "clear and unmistakable terms." Cason, 909 So.2d at 382. The Legislature has also expressly exempted from ad valorem taxation the leasehold interest in State-owned property when the property is leased to a nongovernmental lessee who "serves or performs a governmental, municipal, or public purpose or function, as defined in s. 196.012(6)"; or is "an organization which uses the property exclusively for literary, scientific, religious, or charitable purposes." § 196.199(2)(a), (2)(c), Fla. Stat. (2006). Thus, we conclude that the absence of a clear and unmistakable waiver of immunity from taxation and the exemption of State property used for governmental purposes from ad valorem taxation demonstrate that the Legislature does not intend for section 194.171(2) to constitute a jurisdictional bar to lawsuits brought by the State to challenge tax assessments on State property that is either immune or exempt from taxation.
The related provisions of the statutory scheme for counties to assess and collect taxes also supports this conclusion. Even when no exemption applies and a leaseholder of State property is subject to ad valorem taxation, the penalty for nonpayment falls on the leaseholder and not the State. Section 196.199(8)(a) prohibits any taxes on a leasehold by a nongovernmental lessee from becoming a lien on the governmental property itself. Instead, these taxes "constitute a debt due and shall be recoverable by legal action or by the issuance of tax executions that shall become liens upon any other property in any county of this state of the taxpayer who owes said tax." Id. Similarly, section 197.432(9), Florida Statutes (2006), prohibits either the issuance of a tax certificate or the creation of a lien on property owned by a governmental unit that has become subject to taxation due to the lease of the property to a nongovernmental lessee. Delinquent taxes must either be "enforced and collected in the manner provided in s. 196.199(8)" or, in certain circumstances, "the delinquent taxes become a lien on the leasehold." Id.
Under these related statutory provisions, even when the State has leased its property to a nongovernmental entity and the property is used for nongovernmental purposes, the Legislature has specifically prohibited an issuance of a tax certificate or a lien on the property itself. Thus, under no circumstances can the State lose its property when the lessee fails to pay (or challenge) ad valorem taxes. On the other hand, there are no similar provisions prohibiting the issuance of a tax certificate *315 when the State is the owner of property that it is using for a governmental purpose. This omission is significant in that it suggests the Legislature never contemplated that the State would be a taxpayer whose property could be lost through nonpayment of ad valorem taxes. We conclude that the Legislature did not intentionally enact a statutory scheme that precludes the loss of State property for nonpayment of taxes on leased property but allows the loss through a tax deed sale of State property that has not been leased merely because the State failed to file a timely challenge to the assessment.
We also note that the provisions of section 194.171 differ from the civil statute of limitations, which specifically includes the State within its operation. See § 95.011, Fla. Stat. (2006) (providing that limitations period in chapter applies to civil actions including those brought by public entities including "the state"). In the past, we have pointed to language in other statutes to show that the Legislature "knows how to" accomplish what it has omitted in the statute in question. See, e.g., Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000) (looking to language in different statute to conclude that "[w]hen the Florida Legislature wishes to provide for set-offs for future benefits it well knows how to express itself") (quoting Pizzarelli v. Rollins, 704 So.2d 630, 633 (Fla. 4th DCA 1997)). Section 95.011 shows that had the Legislature chosen to make the State subject to the sixty-day filing requirement in section 194.171(2), it knew how to do so. The omission is especially significant in light of the overriding principle that any waiver of the State's immunity from ad valorem taxation must be clear and direct.
The petitioners actually use the statute of limitations to support their position that because the Legislature clearly intended the State to be subject to the limitations periods set forth in chapter 95, Florida Statutes (2006), the Legislature also intended the State to be bound by section 194.171(2). Section 95.011 provides that
a civil action or proceeding, . . . including one brought by the state, a public officer, a political subdivision of the state, a municipality, . . . or any agency or officer of any of them, or any other governmental authority, shall be barred unless begun within the time prescribed in this chapter or, if a different time is prescribed elsewhere in these statutes, within the time prescribed elsewhere.

(Emphasis supplied.) The petitioners contend that for lawsuits challenging ad valorem tax assessments, the "time prescribed elsewhere" is the sixty-day period in section 194.171(2). We disagree.
The reference to "the time prescribed elsewhere" in section 95.011 encompasses other provisions that can also be construed as statutes of limitations, but not jurisdictional statutes of nonclaim such as section 194.171. We have previously noted the important distinction between a statute of limitations and a jurisdictional statute of nonclaim:
An untimely claim filed pursuant to a jurisdictional statute of nonclaim is automatically barred. Miller v. Nolte, 453 So.2d 397 (Fla.1984). However, a claim filed beyond the time set forth in a statute of limitations is only barred if the statute of limitations is raised as an affirmative defense or, if the defense appears on the face of a prior pleading, by way of a motion to dismiss. Fla. R. Civ. P. 1.110(d). Failure to plead that the statute of limitations has expired constitutes waiver.
May v. Illinois Nat'l Ins. Co., 771 So.2d 1143, 1151 (Fla.2000) (quoting Barnett Bank v. Estate of Read, 493 So.2d 447, 448 (Fla.1986)). Conflating the two would muddle the distinction and yield confusion *316 as to whether actions brought outside the sixty-day period in section 194.171(2) are barred automatically or only when the issue is affirmatively pled. In addition, when the State is the party challenging an ad valorem tax assessment on property it owns, treating section 194.171(2) as a statute of limitations would extract a waiver of the State's immunity from less than clear and unambiguous language.
Accordingly, for all these reasons we conclude that the Legislature did not intend that the sixty-day filing requirement of section 194.171(2) be imposed upon a nontaxpaying governmental entity such as the State.

IV. Risk of Delay
Finally, we caution that although the State is not subject to the sixty-day requirement in section 194.171(2) under these circumstances, lengthy delay by the State in filing suit to vindicate its nontaxable status on property that is nonetheless being taxed remains risky. As noted above, section 95.011 specifies that the limitations periods in chapter 95 apply to the State, its agencies, and officers. Other time limitations on the State's ability to challenge assessments may be derived from the principles of equitable estoppel. See State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981) (stating that equitable estoppel can be applied against the State in "rare instances and under exceptional circumstances"); Trustees of Internal Improvement Fund v. Bass, 67 So.2d 433, 433 (Fla.1953) (concluding that the State was estopped from challenging delinquent tax sale of State-owned land where the present owner had been in possession more than eleven years under a deed issued by the State). However, because the issue before us concerns only the State's status as property owner in relation to section 194.171, we need not address other means by which the sovereign may be precluded from challenging ad valorem property assessments and issuance of tax certificates and tax deeds because of nonpayment of taxes wrongly imposed.

CONCLUSION
The jurisdictional requirement that a lawsuit challenging an ad valorem tax assessment must be filed within sixty days after the assessment is certified for collection cannot be used to preclude the State from contesting sales of tax deeds on property that the State owns and claims is immune from taxation. We do not find, either within section 194.171 or elsewhere, the clear and unambiguous expression of legislative intent necessary to conclude that the Legislature intended that the State be subject to the harsh provisions of section 194.171 and as a result lose its immunity from taxation.
Therefore, we answer the certified question in the negative and hold that the jurisdictional nonclaim provisions of section 194.171 do not apply to a claim by the State challenging a tax assessment as void on the ground that the property assessed is immune from ad valorem taxation. We emphasize that our holding does not address whether the property at issue in this case is in fact immune from ad valorem taxation.[10] Rather, we simply determine *317 that sections 194.171(2) and 194.171(6) do not deprive the trial court of the jurisdiction necessary to decide the issue. We approve the First District's decision in this case.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Section 197.432(1), Florida Statutes (2006), authorizes the sale of tax certificates on property for which ad valorem taxes have not been paid.
[2] Sections 197.502-197.542, Florida Statutes (2006), set out the steps from application for a tax deed to sale of the deed at public auction. After an application for a tax deed is filed under section 197.502, the clerk must notify the property titleholder of the application and approaching tax deed sale and then, after advertising the sale, hold a public auction at which the property is sold to the highest bidder.
[3] The initial complaint was filed by the Correctional Privatization Commission, which identified itself as a state agency and asserted that the prison was operated under its auspices. In 2004, DMS became the successor to the Commission pursuant to chapter 2004-248, Laws of Florida, and was thereafter substituted as a party to the lawsuit.
[4] Unlike State-owned property, which is immune from taxation, property of municipalities is subject to taxation because municipalities are not subdivisions of the state. City of Gainesville, 918 So.2d at 255.
[5] We did not reach the constitutional issue in Markham but noted that we had previously rejected similar challenges to the statute, section 192.037, Florida Statutes (1983). 527 So.2d at 814 n. 1 (citing Day v. High Point Condo. Resorts, Ltd., 521 So.2d 1064 (Fla. 1988) and Spanish River Resort Corp. v. Walker, 526 So.2d 677 (Fla.1988)).
[6] We characterized a tax assessment as void "where it has been assessed in violation of acts of Congress; . . . where the property is not subject to the tax assessed; [or] where the tax roll is illegal due to some affirmative wrongdoing by the taxing official." A voidable assessment is one "which is made in good faith but is merely irregular or unfair." Id. at 815 n. 4.
[7] See § 197.333, Fla. Stat. (2006) ("Taxes shall become delinquent on April 1 following the year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later.").
[8] See § 197.432, Fla. Stat. (2006) ("Sale of tax certificates for unpaid taxes"); § 197.472, Fla. Stat. (2006) ("Redemption of tax certificates").
[9] See § 197.542, Fla. Stat. (2006) ("Sale at public auction").
[10] In Barnett v. Department of Management Services, 931 So.2d 121 (Fla. 1st DCA), review granted, 933 So.2d 520 (Fla.2006), the First District certified the following as a question of great public importance:

WHETHER, IN ENACTING CHAPTER 957, FLORIDA STATUTES, THE LEGISLATURE INTENDED THAT PRISON FACILITIES CONSTRUCTED AND OPERATED BY PRIVATE CONTRACTORS AND LEASED TO THE STATE UNDER A LEASE-PURCHASE AGREEMENT SHALL BE SUBJECT TO AD VALOREM TAXES? 931 So.2d at 133. That case is now pending review in this Court.